# EXHIBIT A



# Service of Process Transmittal
02/18/2016
CT Log Number 528667250

**TO:** Jane Kirkeide
Voith Holding Inc.
PO Box 2337
Appleton, WI 54912-2337

**RE:** Process Served in North Carolina

**FOR:** Voith Paper Fabric & Roll Systems Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | BIORX, LLC, Pltf. vs. VOITH HOLDING, INC. and VOITH PAPER FABRIC & ROLL SYSTEMS, INC., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | CIRCUIT COURT - OUTAGAMIE COUNTY - STATE OF WISCONSIN, WI<br>Case # 16CV133 |
| **NATURE OF ACTION:** | Breach of Contract - BioRx confirmed with Voith the agreed-upon prices and confirmed that Voith had agreed to payment |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Raleigh, NC |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/18/2016 at 12:02 |
| **JURISDICTION SERVED:** | North Carolina |
| **APPEARANCE OR ANSWER DUE:** | Within 45 days of receipt |
| **ATTORNEY(S) / SENDER(S):** | T. Wickham Schmidt<br>Law Firm of Conway, Olejniczak & Jerry, S.C.<br>231 South Adams street<br>Green Bay, WI 54305-3200<br>920-437-0476 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/18/2016, Expected Purge Date: 02/23/2016<br><br>Image SOP<br><br>Email Notification, Jane Kirkeide Jane.Kirkeide@voith.com<br><br>Email Notification, Stephanie Vincent Stephanie.Vincent@voith.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 150 Fayetteville St Ste 1011<br>Raleigh, NC 27601-2957 |
| **TELEPHONE:** | 919-821-7139 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

BIORX, LLC,
7167 E. Kemper Rd.
Cincinnati, OH 45249,

                 Plaintiff,

CLERK OF CIRCUIT COURT
OUTAGAMIE COUNTY FILED
FEB - 8 2016
AT _____ O'CLOCK _____

vs.

**SUMMONS**

VOITH HOLDING, INC.
2200 N. Roemer Rd.
Appleton, WI 54911

Case No.: 16-CV-_____

Case Code: 30303

and

VOITH PAPER FABRIC & ROLL SYSTEMS, INC.,
2200 N. Roemer Rd.
Appleton, WI 54911,

                 Defendants.

---

To each person named above as a Defendant:

You are hereby notified that the Plaintiff BioRx, LLC, has filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this Summons all Defendants must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Outagamie County Courthouse, 320 S. Walnut Street, Appleton, Wisconsin 54911-5918, and to Law Firm of Conway, Olejniczak & Jerry, S.C., Plaintiff's attorneys, whose address is 231 South Adams Street, P.O. Box 23200, Green Bay, Wisconsin, 54305-3200. You may have an attorney help or represent you.

If you do not provide a proper answer within the time period stated above, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this _4th_ day of February, 2016.

Respectfully submitted

_/s/ TWR_

T. Wickham Schmidt (SBN 1062002)
Law Firm of Conway, Olejniczak & Jerry, S.C.
231 South Adams Street
Green Bay, WI 54305-3200
(920) 437-0476 – Telephone
(920) 437-2868 – Facsimile
E-mail: tws@lcojlaw.com

William K. Flynn
Strauss Troy Co., LPA
The Federal Reserve Building
150 East Fourth Street
Cincinnati, OH 45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile

*(771619.003-#2250270)*

BIORX, LLC,
7167 E. Kemper Rd.
Cincinnati, OH 45249

           Plaintiff,

vs.

**COMPLAINT**

VOITH HOLDING, INC.
2200 N. Roemer Rd.
Appleton, WI 54911

Case No.: 16-CV-133

Case Code: 30303

and

VOITH PAPER FABRIC & ROLL SYSTEMS, INC.,
2200 N. Roemer Rd.
Appleton, WI 54911

           Defendants.

CLERK OF CIRCUIT COURT OUTAGAMIE COUNTY FILED FEB - 8 2016 AT _____ O'CLOCK

## INTRODUCTION AND PARTIES

Plaintiff, BioRx, LLC, ("BioRx") states for its Complaint against Defendants Voith Holding, Inc. ("Voith Holding") and Voith Paper Fabric & Roll Systems, Inc. ("Voith PFR") (Voith Holding and Voith PFR together "Voith") as follows:

1.     Plaintiff BioRx is a Delaware limited liability company having as its principal place of business 7167 E. Kemper Rd., Cincinnati, Ohio. Plaintiff's sole member is a Delaware corporation.

2.     Defendant Voith Holding is a Delaware corporation, registered to do business in the state of Wisconsin, having as its principal place of business 2200 N. Roemer Rd., Appleton, Wisconsin.

3.  Defendant Voith Holding owns and controls a facility in Wilson, North Carolina, operated as Defendant Voith PFR. Voith PFR is also a Delaware corporation having the same principal office address as Defendant Voith Holding, 2200 N. Roemer Rd., Appleton, Wisconsin.

4.  BioRx is a specialized pharmacy providing, among other things, supervised infusion therapies that help customers administer life-saving drug regimens for patients who suffer from various blood disorders such as hemophilia.

5.  Among other services, BioRx provides comprehensive hemophilia support from trained "advocates" who are themselves typically members of the bleeding disorders community.

6.  Defendant Voith Holding is the United States holding company for Germany based Voith GmbH, a multinational, family-owned technology, manufacturing, and engineering services conglomerate organized into four primary groups: hydro, industrial, paper, and turbo. Worldwide in 2014, Voith GmbH had more than 39,000 employees and €5.3 billion in sales ($6.4 billion). Approximately €1.53 billion ($1.85 billion) of that total is from operations in the United States.

**FACTS SUPPORTING CLAIMS FOR RELIEF**

7.  In 2012 and 2013, Voith employed an individual at Voith PFR, referred to herein as "Employee AD" in the interest of maintaining the confidentiality of personal medical information concerning her five year old son (referred to herein as "Son"), for whom she has continuing parental custody and care. Employee AD and her Son were at the relevant time residents of North Carolina.

2

8. Employee AD's Son suffers from severe Hemophilia "A," a congenital bleeding disorder associated with a life-long tendency for bleeding into muscles and joints, as well as the risk of life threatening hemorrhage. People with hemophilia have little or no clotting "factor," which is a protein that helps platelets stick together to plug cuts and breaks on a blood vessel and stop bleeding.

9. People with Hemophilia A are missing or have low levels of a factor called Clotting Factor VIII. Improper or inadequate treatment can result in catastrophic physical deformities, repeated hospitalizations, and death.

10. The primary treatment for hemophilia is factor replacement therapy. With appropriate medically supervised training, concentrates of human clotting factor or synthesized clotting factors, called recombinant factors, can be stored, mixed and then infused at home. Preventive factor therapies, especially for patients as young as Employee's Son, often mean daily infusions.

11. In this particular case, treatment is complicated by the fact that Son developed an "inhibitor" to Factor VIII products, which occurs in about 25% of severe Hemophilia A patients. Inhibitor antibodies can destroy clotting factor before it has a chance to work, meaning these patients tend to bleed more frequently and are not as responsive to Factor VIII therapy. These particular patients can require daily injections of bypassing agents such as Novoseven®, to prevent severe bleeding.

12. Because of these complications, Son's treatment is significantly more complex than other, more routine cases of hemophilia. He has an implanted central venous catheter ("PICC" line) and will require a complex treatment plan of infused medications and home care resources for the remainder of his life, or until a cure is discovered.

3

13. In addition to Novoseven®, Son is on numerous medications, including Xyntha®, Alphanate®, Neupogen®, and antibiotics like Vancomycin.

14. At the times relevant here, Son simply would not have survived without an uninterrupted, sometimes daily supply of medicine and supplies. This was his condition in November 2012, when his mother identified BioRx as a potential hemophilia therapy provider.

15. Upon information and belief, during the time relevant to this Complaint, Defendant Voith Holding maintained a Voith Group Medical Plan (the "Plan") that provided certain insured medical benefits to Voith employees, including Employee AD. During the time relevant to this Complaint, the Plan was administered for Voith by UnitedHealthcare ("UHC").

16. Because BioRx was not a pharmacy provider under contract with UnitedHealthcare, Plaintiff was deemed a "non-network," "non-participating" or "non-contracted" provider.

17. Furthermore, because BioRx did not then, and does not now, hold an assignment of claims that Employee AD may have had as a Plan participant, Plaintiff is neither a qualified "participant" nor "beneficiary" under the Employee Retirement Income Security Act ("ERISA") §§502(a)(1)(B).

18. Plaintiff's claims against Voith in this action are not dependent upon and do not rely upon any interpretation or application of the Plan. Instead, as detailed below, Plaintiff's claims arise from independent state common-law and statutory duties owed to BioRx by Defendant.

4

19. In addition to acting as Plan administrator, UHC was Voith's agent responsible for processing independent payment obligations assumed by Voith, including Voith's agreement to pay BioRx for the products and services delivered to Employee AD and described below.

20. Voith made specific representations and promises to pay BioRx for medicine and service delivered to Employee AD. More than once, as set forth below, Voith or its authorized agent promised that Voith would pay for the products and services and assured BioRx that it needed no additional authorization or approval.

21. On or about January 4, 2013, acting as Voith's authorized agent, UHC represented to BioRx that Voith agreed to pay for Novoseven® recombinant blood factor VII, "HCPCS J7189" (healthcare common procedure coding system), for Employee AD's Son.

22. On or about January 18, 2013, a Voith manager contacted BioRx to confirm that BioRx was a certified home infusion provider.

23. Voith's manager confirmed that Defendant had paid Employee AD's previous pharmacy provider, who was providing the same blood factor products that BioRx would be delivering.

24. BioRx specifically asked Voith if any additional approvals were required, and Voith's manager assured BioRx that no additional approvals were required and BioRx could bill for its products and services: "No...as long as you guys are comfortable that everything is legal and billing under the J codes and S codes, there's no problem. You can go ahead and do that."

25. On or about January 23, 2013, Voith confirmed its previous promise of payment, telling BioRx that "UHC will run it through as out of plan. Please bill as stated."

5

26. The same day, BioRx confirmed with Voith the agreed-upon pricing: "It's great to know that employers like yours (sic) truly care about the health and well-being of your employees and their families. See attached the pricing and cost savings we wish to provide. Thanks again for everything."

27. On or about January 25, 2013, BioRx confirmed with Voith the agreed-upon prices and confirmed that Voith had agreed to payment: "[S]ince you are allowing this under Out (sic) of network medical benefits, we are billing as Home Infusion through medical. We will go ahead and bill the Novoseven at 1.70 per unit and the Xyntha at 1.30 per unit (as I noticed a typo on the original request) and UHC will process as Out (sic) of network. Please let me know if you have any questions."

28. Voith affirmed, responding: "Thank you for clarifying. I appreciate your patience in helping us all to understand what services are being provided and working through the normal red tape."

29. In reliance upon the representations and promises of payment by Voith, BioRx began deliveries of Novoseven®, Xyntha®, Alphanate®, and related supplies to Employee AD for her Son's continuing home infusion therapy.

30. Beginning on or about January 25, 2013 and continuing on various dates thereafter, through and including October 21, 2013, Plaintiff BioRx provided medications and services for the benefit of Defendant's Employee AD.

31. Affirming its approval and consistent with its promises of payment, Voith paid or caused BioRx to be paid the cumulative negotiated price of $688,373.30 for deliveries through April, 2013.

6

32. Because it was typical for payment to take as long as 60-90 days after product was ordered by Employee AD and delivered by BioRx, Plaintiff continued to rely upon Voith's promises of payment and its course of dealing in making payments by continuing deliveries through June. It was not until June 27, 2013, that Voith, for the first time, initially denied payment for a delivery.

33. In reliance upon the prior promises of payment and the actual course of dealing of Voith making payment, Plaintiff reasonably concluded that the denial communicated by UHC was an error. Plaintiff's conclusion was reinforced by the fact that after the June 27 denial, on July 1, 2013, UHC approved payment for an earlier delivery and UHC asked BioRx for additional information for reconsideration.

34. Over the ensuing months, while BioRx resubmitted claims and responded to repeated requests from UHC for additional information, Son. still needed regular medication, or he risked serious complications and even possible death.

35. In reliance upon Voith's initial promises, upon Voith's course of dealing in making payments as promised, and upon UHC's repeated requests for additional information and representations that claims for deliveries occurring after June would be reconsidered, BioRx continued to fulfill deliveries for Employee AD through October 21, 2013.

36. Further, affirming Voith's promises of payment, even after the first suggestion of a denial on June 27, 2013, after reconsidering additional information, Voith paid Plaintiff for $160,000 of product delivered on or about August 26, 2013, but inexplicably and arbitrarily refused and continues to refuse payment for similar deliveries in May, June, July, and August.

7

37. Contrary to its promises as affirmed by its course of dealing in paying BioRx the negotiated prices, Voith refused and continues to refuse payment for $880,631.60 of medications and services provided to Employee AD and her Son between May 29 and October 21, 2013.

38. Had the lower prices not been agreed to by the parties, the usual and customary, or fair value, of the products and services for which Voith refuses payment, is $2,682,066.46.

## COUNT I
### (Breach of Contract)

39. Plaintiff incorporates by reference all of the above assertions.

40. Plaintiff and Defendants were parties to an enforceable written and/or oral contract to provide goods and services.

41. Plaintiff performed as promised by the delivery of requested pharmaceutical infusion products and related services for the benefit of one of Defendants' employees.

42. Defendants jointly breached the contract and failed to perform as promised by refusing to pay for the requested products and services.

43. Defendants' breach of contract has caused Plaintiff to incur actual damages in an amount not less than $880,631.60, excluding interest and the costs of collection.

## COUNT II
### (Promissory Estoppel)

44. Plaintiff incorporates by reference here all of the above assertions.

45. Defendants reasonably should have expected that their promises to pay and actual payment would induce Plaintiff to act by delivering the requested goods and services.

8

46. Plaintiff reasonably relied upon Defendants' promises and course of dealing and was in fact induced into action by delivering the requested goods and services.

47. Severe injustice can be avoided only by enforcing Defendants' promise to pay.

48. The fair value of Plaintiff's damages is $2,682,066.46, excluding interest and the costs of collection.

## COUNT III
### (Negligent Misrepresentation)

49. Plaintiff incorporates by reference here all of the above assertions.

50. Defendants, in the course of their business dealings with Plaintiff, represented to BioRx that it was approved and authorized to provide the requested goods and services such that payment would follow performance.

51. Defendants now contend that such statements representing approval and authorization were untrue and Plaintiff was not in fact approved or authorized for payment.

52. If Defendants' representations were in fact untrue, then Defendants failed to exercise reasonable care and were negligent in making such statements or otherwise proffered them with reckless disregard for the truth.

53. Defendants' false statements were made with intent to deceive and to induce Plaintiff into delivering goods and service without payment, thus causing Plaintiff substantial damage.

54. Plaintiff believed Defendants' statements of approval to be true and justifiably relied on them in providing the goods and services.

9

55. Plaintiff's justifiable reliance upon Defendants' statements of approval and authorization has caused it damages in an amount not less than $2,682,066.46, excluding interest and the costs of collection.

## COUNT IV
### (Unjust Enrichment)

56. Plaintiff incorporates by reference here all of the above assertions.

57. Defendants knowingly accepted and retained the benefit of having the goods and services provided by Plaintiff delivered to one of Defendants' employees.

58. It is unjust for Defendants to retain the benefit of the delivered goods and services without payment.

59. Plaintiff has been harmed by Defendants' unjust and inequitable conduct in an amount of $2,682,066.46, excluding interest and the costs of collection.

## COUNT V
### (Pharmacy of Choice N.C.G.S. §58-51-37)

60. Plaintiff incorporates by reference here all of the above assertions.

61. Upon information and belief, evidenced in part by IRS Form 5500 for 2013 filed by Defendant Voith Holding, benefits payable to Employee AD under the Plan were funded in part by insurance as opposed to the general assets of Voith.

62. The North Carolina "Pharmacy of Choice" statute, N.C.G.S. §58-51-37, provides that a benefit plan *"shall not* [p]rohibit or limit a resident of [North Carolina], who is eligible for reimbursement for pharmacy services as a participant or beneficiary of a health benefit plan, from selecting a pharmacy of his or her choice when the pharmacy has agreed to participate in the health benefit plan according to the terms offered by the insurer."

10

63. The Pharmacy of Choice statute further provides that a plan "shall not [d]eny a pharmacy the opportunity to participate as a contract provider under a health benefit plan if the pharmacy agrees to provide pharmacy services that meet the terms and requirements, including terms of reimbursement, of the insurer under a health benefit plan, provided that if the pharmacy is offered the opportunity to participate, it must participate or no provisions of G.S. 58-51-37 shall apply."

64. At all times relevant to this claim, Employee AD and her Son were residents of North Carolina. As a North Carolina registered pharmacy, BioRx was not only not offered the opportunity to participate as a contracted provider under the Plan, it was expressly denied participation, notwithstanding that Plaintiff agreed to meet or better the terms for reimbursement under the Plan.

65. A violation of the North Carolina statute creates a civil cause of action for damages in favor of any pharmacy aggrieved by the violation, which in this case means is Plaintiff BioRx.

66. As a consequence of Defendants' statutory violations, Plaintiff has suffered damages in an amount not less than $880,631.60, excluding interest and the costs of collection.

67. Because North Carolina's "Pharmacy of Choice" statute is a state law that regulates insurance, claims under the statute are not subject to preemption by the Employee Retirement Income Security Act of 1974 ("ERISA"), pursuant to the Supreme Court's decision in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003).

11

WHEREFORE, Plaintiff, BioRx, LLC, prays for judgment against Defendants, Voith Holdings, Inc. and Voith Paper Fabric & Roll Systems, Inc., jointly and severally, in an amount not less than the negotiated price of $880,631.60, or alternatively the fair value of the delivered products and services in the amount of $2,682,066.46, plus pre-judgment and post-judgment interest, the costs of this action, reasonable attorneys' fees and any additional legal or equitable relief to which Plaintiff may be entitled.

Dated this _4th_ day of February, 2016.

Respectfully submitted

_/s/ T. Wickham Schmidt_

T. Wickham Schmidt (SBN 1062002)
Law Firm of Conway, Olejniczak & Jerry, S.C.
231 South Adams Street
Green Bay, WI 54305-3200
(920) 437-0476 – Telephone
(920) 437-2868 – Facsimile
E-mail: tws@lcojlaw.com

William K. Flynn
Strauss Troy Co., LPA
The Federal Reserve Building
150 East Fourth Street
Cincinnati, OH 45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile

12